**SO ORDERED.**

**SIGNED this 26th day of February, 2026.**




Dale L. Somers
United States Chief Bankruptcy Judge

---

*Designated for Print Publication*

**THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **In re:** | **Case No. 19-41158** |
| **Gary L. Niermeier,** | **Chapter 12** |
| **Debtor.** | |

**Memorandum Opinion and Order Partially Granting Motion to Modify**

Debtor's confirmed Chapter 12 plan provides for secured creditor First State Bank, Hoxie, Kansas (the "Bank"), to be paid in annual payments over seven years beginning in February 2022. By its terms, the plan may only be modified under 11 U.S.C. § 1229.[1] Four years after confirmation and after making the first three of seven payments to the Bank, Debtor failed to pay the fourth payment. In May 2025, he moved to modify the plan to pay the remaining balance owed to the Bank in semi-

[1] All statutory references are to Title 11 of the United States Code (the "Bankruptcy Code") unless otherwise indicated.

annual payments over ten years beginning in August 2025. The Bank objected to the motion, arguing, inter alia, that § 1229(c) prohibits plan modifications that extend payments longer than five years after the first payment was originally scheduled. Debtor argues § 1229(c) does not restrict payment of secured claims. Because § 1229 *generally* prohibits payments longer than five years but *specifically* allows for payments on secured claims longer than five years, the Court finds the proposed extension of secured payments is an exception to § 1229(c) and is in accordance with the statutory scheme of Chapter 12. Debtor's motion to modify the plan is granted, in part, as compliant with § 1229(c) with regard to the Bank's claim.[2]

## I. Background and Procedural Posture[3]

Debtor filed a voluntary petition under Chapter 12 of the Bankruptcy Code on September 13, 2019. On July 23, 2020, Debtor filed his *First Amended Chapter 12 Plan*.[4] In the plan as filed, Debtor classified the Bank's claim of $852,163.72 as secured by a mortgage on Debtor's residential and agricultural real estate and by a security interest in Debtor's crops, livestock, and other personal property. Debtor proposed to pay the claim in two subclasses, with payments on the real property portion of the claim over 20 years and annual installments on the personal property portion until paid in full.

---

[2] The remainder of Debtor's motion to modify (Doc. 264) and the Bank's motion for relief from stay (Doc. 261) are set for status conference on April 9, 2026.

[3] The Court takes judicial notice of its docket in this case. *See Gee v. Pacheco,* 627 F.3d 1178, 1191 (10th Cir. 2010) ("We take judicial notice of court records in the underlying proceedings."); *U.S. v. Ahidley,* 486 F.3d 1184, 1192 n.5 (10th Cir. 2007) ("[W]e may exercise our discretion to take judicial notice of publicly-filed records in our court and certain other courts concerning matters that bear directly upon the disposition of the case at hand.").

[4] Doc. 74.

The Bank objected to confirmation of the plan,[5] arguing, *inter alia*, that the plan did not provide for the full value of the Bank's claim as required. While the parties negotiated their differences, the Court entered an agreed order granting relief from the automatic stay to allow the Bank to offset commodity proceeds held as cash collateral against its claim.[6] Debtor, the Bank, and other objecting parties agreed to continue the hearing on confirmation of the plan several times, ultimately submitting an agreed order confirming the plan with modifications. The Court entered the agreed order on March 19, 2021 (the "Order Confirming").[7]

The Order Confirming contained, in relevant part, the following amendment to the plan as filed concerning the Bank's claim:

> 3. … As a resolution of First State Bank's objections, Debtor and First State Bank stipulate and agree as follows:
>
> Class 7, Subclasses A and B of the Debtor's First Amended Chapter 12 Plan shall be replaced with the following: "Debtor will retain his interest in the real estate and personal property securing the claim of First State Bank, Hoxie, Kansas, by paying its remaining claim in the amount of $685,347.92 together with interest at the rate of 7.0% in annual payments amortized over seven (7) years, the first of such annual payments in the approximate amount of $127,102.06 to become due February 15, 2022 and on the same day of the following six years until paid in full. …"

Debtor's payments to the Bank under the terms of the confirmed Plan as modified by the Order Confirming are due on February 15th of each year, with the last payment due on February 15, 2028. The Bank received payments in 2022, 2023,

---

[5] Doc. 84.
[6] Doc. 103.
[7] The plan as filed (Doc. 74), together with the modifications contained in the Order Confirming (Doc. 119), will be referred to as "the Plan."

and 2024.[8] The Bank alleges, and Debtor does not dispute, that it did not receive the payment due February 15, 2025. The Bank filed its *Motion for Stay Relief* based on that default.[9]

On May 14, 2025, Debtor filed his *Motion for Authority to Modify Chapter 12 Plan*.[10] Debtor alleges that at the time of confirmation, his operation included a beef cow/calf operation. Asserting a change of circumstances due to drought conditions in Northwest Kansas in April 2023, he was unable to secure pasture for his livestock and exhausted other feed resources which forced him to liquidate his herd.[11] In May 2023, the Court granted Debtor's emergency motion to sell the livestock outside the ordinary course of business.[12] The Bank's liens attached to the proceeds of the sale which were paid to the Bank to reduce the Bank's claim.

In the Motion, Debtor alleges that through other payments made and turnover of the cattle sale proceeds, he has reduced the Bank's claim to approximately $399,000. He also alleged, however, that "[w]ithout the income generated by the cow/calf operation, the plan payments due to [the Bank] annually in the amount of $127,102.03 have proven to be unattainable from available cashflow."[13] Debtor proposes to modify the terms of the confirmed plan to replace the Bank's treatment (Class 7), in relevant part, with the following:

---

[8] *See* the Bank's *Objection of First State Bank, Hoxie, Kansas to Motion for Authority to Modify Chapter 12 Plan*, Doc. 273, ¶ 2.
[9] Doc. 261 (the "Stay Relief Motion").
[10] Doc. 264 (the "Motion").
[11] *See* Motion, ¶ 8 and Doc. 212, ¶ 7, *Order Granting Debtor's Emergency Motion for Authority to Sell Livestock other than in the Ordinary Course and to Ratify Sale of Livestock Sold on Emergency Basis* (the "Order to Sell").
[12] *See* Order to Sell.
[13] Motion, ¶ 10.

> Debtor will retain his interest in the real estate and personal property securing the claim of First State Bank, Hoxie, KS, by paying its remaining claim in approximate amount of $399,000 together with interest at the Till Rate (6.91%) in semi-annual payments amortized over ten (10) years, the first of such semi-annual payments in the approximate amount of $27,959.88 to become due August 1, 2025 and on the same day semi-annually thereafter until paid in full.[14]

Under the proposed modification, Debtor's first semi-annual payment would have been due August 1, 2025[15] and his last payment would be due February 1, 2035.[16]

The Bank objects to Debtor's proposed modification.[17] It argues that § 1229(c) prohibits modifications with payments extending longer than five years after the first payment in the original plan. The Court interprets the Bank's objection as arguing the liquidation of the cow/calf operation is insufficient cause to modify the plan because since the liquidation, Debtor has been able to plant a 2025 wheat crop without financing and has made plan payments to the U.S. Trustee, the unsecured creditors, and to all other secured and over-secured creditors except the Bank.[18]

In response, Debtor argues that § 1229(c) cannot be read literally because it would violate the statutory scheme of Chapter 12 and render a debtor's right to modify secured claims under Chapter 12 substantially inferior to a debtor's right to modify under Chapter 11.[19] Debtor argues that because the Bank is over-secured, the

---

[14] *See* the Motion, ¶ 11.
[15] The record does not reflect whether Debtor has paid the August 2025 or February 2026 payments as proposed.
[16] The Court assumes that semi-annual payments denotes one payment every six months and therefore extrapolates that the second payment each year would be on February 1.
[17] Doc. 273, (the "Objection").
[18] The Objection, ¶¶ 5-6.
[19] *See* Doc. 282, *Debtor's Brief in Support of its Motion for Authority to Modify Chapter 12 Plan.*

extension maximizes the benefit to other creditors and Debtor while maintaining the Bank's rights.

On July 23, 2025, the Court held a hearing on the Motion[20] at which the parties agreed to bifurcate the Motion and brief the limited legal issue of whether § 1229(c) prohibits modification of a confirmed Chapter 12 plan that would extend payments of a secured creditor's claim over a period longer than five years after the time that the first payment under the original confirmed plan was due. The Court does not, therefore, consider the parties' additional arguments and does not rule on whether the proposed modification otherwise complies with § 1229.

II. Chapter 12 Plan Modification – Ambiguity of Statutes

Post confirmation modifications of Chapter 12 plans are governed by § 1229. Subsection (a) of § 1229 permits modifications "any time after confirmation of the plan but before the completion of payments under such plan" based on four designated changes. Under subsection (b), "any modification under subsection (a)" is subject to the requirements found in §§ 1222(a), 1222(b), 1223(c), and 1225(a). Under subsection (c) of § 1229, a modification:

> … may not provide for payments over a period that expires after three years after the time that the first payment under the original confirmed plan was due, unless the court, for cause, approves a longer period, but the court may not approve a period that expires after five years after such time.[21]

[20] Debtor appears by counsel Tom Barnes; the Bank appears by counsel Charles Engel.
[21] § 1229(c).

This 5-year limit on payments in modified plans in § 1229(c) is similar to the 5-year limit on payments in original plans in § 1222(c), which reads:

> (c) Except as provided in subsections (b)(5) and (b)(9), the plan may not provide for payments over a period that is longer than three years unless the court for cause approves a longer period, but the court may not approve a period that is longer than five years.[22]

Thus, under § 1222(c), a debtor cannot propose an original plan that provides for payments over a period longer than five years *except as provided* in §§ 1222(b)(5) and (b)(9).

The § 1222(b)(9) exception to § 1222(c) reads:

> (b) Subject to subsections (a) and (c) of this section, the plan may—
> … (9) provide for payment of allowed secured claims consistent with section 1225(a)(5) of this title, over a period exceeding the period permitted under section 1222(c).

The § 1222(b)(9) exception therefore allows for payment periods to exceed the § 1222(c) 5-year limit. To extend payments of allowed secured claims past five years § 1222(b)(9) requires compliance with § 1225(a)(5), which requires, with regard to secured claims, (1) the holder has accepted the plan, (2) the holder retains its lien and is paid the allowed secured claim's full value, or (3) the debtor surrenders the collateral.[23] An original plan may propose payments to allowed secured claims for any

---

[22] § 1222(c).

[23] § 1225(a)(5)(A). It reads:

(a) Except as provided in subsection (b), the court shall confirm a plan if— …
  (5) with respect to each allowed secured claim provided for by the plan—
    (A) the holder of such claim has accepted the plan; …
    (B) (i) the plan provides that the holder of such claim retain the lien securing such claim; and
    (ii) the value, as of the effective date of the plan, of property to be distributed by the trustee or the debtor under the plan on account of such claim is not less than the allowed amount of such claim; or
    (C) The debtor surrenders the property securing such claim to such holder; …

length of time so long as the creditor accepts the plan or the debtor otherwise complies with § 1225(a)(5). Here, the 7-year payment period in the original confirmed plan did not violate § 1222(c)'s 5-year limit because the Bank held an allowed secured claim and had accepted the plan. The 7-year payment period was permissible under § 1225(a)(5) and therefore complied with § 1222(b)(9) and (c).

Indeed, the ability of a Chapter 12 debtor to pay on the family farm over a period longer than five years is one of the key advantages family farmers enjoy by utilizing Chapter 12—relief that is unavailable in Chapter 13, which prohibits longer-than-5-year payment of arrearages on claims secured by the debtor's primary residence.[24] "In this important key respect, Chapter 12 is different than Chapter 13."[25] Chapter 12 also allows debtors to avoid the debt limits of Chapter 13 and the absolute priority rule of Chapter 11 which make those chapters unavailable or highly problematic to family farmers.[26]

Based on the above statutes, in original Chapter 12 plans, family farmer debtors may propose extended repayment periods for secured claims under § 1222(b)(9) but are restricted to 5-year repayment periods for other claims by § 1222(c). Whether a debtor may also extend the repayment period for secured claims in a modification of an original plan is not as clear.

---

[24] *See* §§ 1322(b)(2) and (c).

[25] *Matter of Schnakenberg,* 195 B.R. 435, 438 (Bankr. D. Neb. 1996).

[26] *See* 132 Cong. Rec. H8986-02 (Oct. 2, 1986) ("Most family farmers have too much debt to qualify as debtors under Chapter 13 and are thus limited to relief under chapter 11. Unfortunately, family farmers have found Chapter 11 needlessly complicated, unduly time-consuming, inordinately expensive and, in too many cases, unworkable."). *See also* the Supreme Court's decision in *Norwest Bank Worthington v. Ahlers,* 485 U.S. 197, 206 (1988), effectively removing Chapter 11 as a vehicle for reorganizing family farm debt, finding the absolutely priority rule bars debtors' retention of equity interest in farm property.

Section 1222 governs the contents of original plans and § 1229 governs modifications to original plans. Section 1229(c) is analogous to § 1222(c) in that it restricts the payment period under the modified plan to no longer than five years.[27] But § 1229(c) does not expressly except secured claims from the limit as § 1222(b)(9), by reference to § 1222(c), does. This Court can identify only a handful of cases dealing with this issue. Two courts have concluded modifications may not contain payment provisions to secured claimants longer than five years and one court has ruled that they may.[28] The Court adopts the position of the latter for the reasons set forth below.

The entirety of § 1229, not just § 1229(c), governs modifications to confirmed Chapter 12 plans. As noted above, § 1229(b) reads:

> (b)(1) Sections 1222(a), ***1222(b)***, and ***1223(c)*** of this title and the requirements of section 1225(a) of this title apply to any modification under subsection (a) of this section.
>
> (2) The plan as modified becomes the plan unless, after notice and a hearing, such modification is disapproved. [emphasis added]

Section 1229(b)(1) includes subsections (a) and (b) of § 1222 but not subsection (c). It is curious that § 1229(b)(1) includes subsection (c) of *§ 1223* when § 1223 governs modifications of a plan *before* confirmation. Section 1223(c) holds secured claimants to their original acceptance or rejection of a plan upon pre-confirmation modification unless the modification changes their rights and as a result, changes their vote.[29] Since voting to confirm a plan is irrelevant in a post-confirmation § 1229

---

[27] *See* 11 U.S.C. § 1229(c).
[28] See discussion below.
[29] § 1223(c) reads:
> Any holder of a secured claim that has accepted or rejected the plan is deemed to have accepted or rejected, as the case may be, the plan as modified unless the modification provides for a change in the rights of such holder from what such rights were under

modification, it appears that Congress's inclusion of § 1223(c) in § 1229(b)(1) was in error. The Court suspects Congress intended to include § 1222(c) instead of § 1223(c). Regrettably, the legislative history is silent on this point. Fortunately, the Court need not rely on its suspicions because explicit inclusion of § 1222(c) in § 1229(b)(1) is not necessary. Section 1222(b) is already subject to § 1222(c).

Section 1229(b)(1) applies various provisions governing original plans directly to modifications, including the provisions of § 1222(b). Section 1222(b), in turn, is itself subject to the provisions of § 1222(a) and (c) ("Subject to subsections (a) and (c) of this section, the plan may—").[30] So by its terms, all the provisions of § 1222(a)-(c) apply to § 1229 modifications.

Moreover, § 1222(b), naturally includes § 1222(b)(9) which, as the Court has previously discussed, excepts secured claims from the § 1222(c) limit. As a result, secured claims are excepted from both the § 1222(c) limit and, through § 1222(b)(9), the § 1229(c) limit.

Contrary to this statutory analysis, when faced with a similar question, the court in *Matter of Schnakenberg* found "[s]ection 1222(b)(9) is explicitly applicable to modified plans, but section 1229 does not reference section 1222(c)."[31] Therefore, the *Schnakenberg* court concluded that to give § 1229(c) meaning, it must limit payments to five years regardless of the claimant's secured status.[32]

---

the plan before modification, and such holder changes such holder's previous acceptance or rejection.

[30] § 1229(b).

[31] *Matter of Schnakenberg*, 195 B.R. at 439.

[32] *Id.*

However, a court need not ignore the § 1222(b)(9) exception in order to give § 1229(c) meaning. Rather, § 1222(b)(9) acts harmoniously as a *specific* exception to the § 1229(c) *general* rule. Section 1229(c) prohibits "payments" over a period of five years but does not specify what type of payments it refers to, implying that it includes every payment of any nature whatsoever. If general words are to be accorded their "full and fair scope"[33] then "payments" in subsection (c) means every payment on every type of claim. In contrast, the word "payment" in § 1222(b)(9) specifically refers to "payment of allowed secured claims."[34] Section 1229(c) is general; section 1222(b)(9) is specific.

In 1974, Justice Blackmun clarified in *Morton v. Mancari* how the Court is to interpret statues that seem to be at odds based on this general/specific distinction. "Where there is no clear intention otherwise, a specific statute will not be controlled or nullified by a general one…."[35] Section 1229(c) does not evince a clear intention to deny secured claims the § 1222(b)(9) exception. Therefore, it will not control or nullify § 1222(b)(9). Since both statutes apply to § 1229 modifications, the specific statute prevails. Section 1222(b)(9) is an exception to the § 1229(c) general rule. It follows that modifications may provide for payments to secured claimants longer than five years after the first payment in the original plan.

In *In re Stone*, the Bankruptcy Court for the Southern District of Texas relied upon the same reasoning as *Schnakenberg* concluding that "the § 1229(b)(9) [sic]

---

[33] *See* Antonin Scalia & Bryan A. Garner, *Reading Law* 101 (2012).
[34] 11 U.S.C. § 1222(b)(9).
[35] *Morton v. Mancari,* 417 U.S. 535, 550-51 (1974) (Blackmun, J.).

exception to the general five-year rule is explicit; it overrides § 1222(c) but not § 1229(c)."[36] On that basis, the court found that the modified plan could not provide for secured payments beyond five years. This interpretation directly contradicts *Morton*'s mandate and ignores the rule of statutory construction that the specific overrides the general.

*Stone* also fails to consider that § 1229(b)(1) explicitly applies *all* of § 1222(b) to modifications. It does not follow that the Court should therefore refuse to apply § 1222(b)(9) to modifications. If § 1222(b)(9) states secured claims can be paid longer than five years, and § 1229(b)(1) states § 1222(b)(9) applies to modifications, the Court cannot simply excise the exception because it is not "explicitly" referenced in § 1229(c). To do so would remove § 1222(b)(9) from § 1229(b)(1) which is directly contrary to that statute. By this reasoning, in considering a modification, the Court would have to disregard all references within § 1222(b) that are not explicitly incorporated elsewhere in § 1229. For example, a court would have to disregard the ability to classify claims per § 1122 as in § 1222(b)(1) or to provide for executory contracts per § 365 as in § 1222(b)(6). This would be an absurd result.

Indeed, the incorporation of § 1222(b)(9) into § 1229(b)(1) and the general/specific interpretation more closely align with the statutory scheme of Chapter 12 that, as a defining feature, allows debtors to propose plans modifying payment on the family farm and other secured claims over periods substantially

---

[36] *In re Stone*, No. 14-31692, 2018 WL 878895, at *2 (Bankr. S.D. Tex. Feb. 12, 2018). The Court assumes the *Stone* court made a scrivener's error, meaning to refer to § 1222(b)(9) rather than § 1229(b)(9), which does not exist.

longer than five years. If the Court rules that § 1229(c) prohibits modification of payments on secured claims longer than five years after the first payment, then a family farmer who pays longer than five years on a secured claim in his original plan could never modify the plan. As stated in a leading bankruptcy treatise, "[i]f Code § 1229(c) is read literally, secured claims which are being paid over a period longer than three or five years could not be modified after confirmation."[37]

In *In re Hart*, the court acknowledged, and this Court agrees, that in reality, "almost all chapter 12 plans, both as originally confirmed and as proposed to be modified, provide for the payment of claims secured by the family farm to be paid over periods substantially longer than 3 to 5 years."[38] The *Hart* court found that the inconsistency between §§ 1222(b)(9) and 1229(c) can be resolved with reference to the statutory scheme of Chapter 12:

> Chapter 12 is emergency legislation which is designed to "give family farmers facing bankruptcy a fighting chance to reorganize their debts and keep their land." Joint Explanatory Statement of the Committee of Conference, reprinted in 132 Cong. Rec. H8998, H8999 (Oct. 2, 1986) [sic]. Limiting a family farmer's ability to amend a confirmed plan to provide for the repayment of the farm mortgage beyond three to five years would be inconsistent with chapter 12's stated purpose.[39]

The *Hart* court emphasizes there is no limit to the modification of secured claims in Chapter 11 and "Congress did not intend farm reorganizations under chapter 12 to be less accessible to farmers than the relief provided by chapter 11."[40]

---

[37] 5 Norton Bankr. L. & Prac. 3d § 136:7 (citing generally, *In re Hart,* 90 B.R. 150 (Bankr. E.D.N.C. 1988)).
[38] *In re Hart*, 90 B.R. 150, 153 (Bankr. E.D.N.C. 1988).
[39] *Id.* Note the correct citation to the congressional record here is 132 Cong. Rec. H8986-02 (Oct. 2, 1986).
[40] *In re Hart,* 90 B.R. at 154 (citing *Norwest Bank Worthington v. Ahlers,* 485 U.S. 197 (1988) which states "[t]he legislative history of the Act [establishing Chapter 12] makes it clear that one of Congress'

This Court's general/specific interpretation of § 1222(b)(9) as an exception to § 1229(c) is consistent with the statutory scheme of Chapter 12. It is the better approach and will be followed here.

## III. Analysis

Debtor proposes to modify the Plan to extend payments to the Bank for ten years or until March 1, 2035. Under the original confirmed Plan, Debtor was to pay for seven years, and Debtor's last payment was to have been February 1, 2028. If read without regard to the specific exception for secured claims, § 1229(c) would limit any modification Debtor sought to five years with a last payment no later than April 2, 2026—almost two years earlier than the Bank originally agreed to accept payments. Indeed, if Debtor filed his motion to modify at any time after April 2, 2026, he would be permanently prohibited from modifying his payment length at all. This is a nonsensical and absurd result. Congress could not have intended to allow secured payments to last longer than five years but at the same time make the payment term impossible to modify after five years had passed.

By its terms, the confirmed Chapter 12 Plan may only be modified pursuant to § 1229.[41] The proposed modification provides for payments to pay the remaining amount of the Bank's claim for ten years with the final payment due on February 1, 2035. The Bank's claim is an allowed secured claim secured by Debtor's family farm

---

principal concerns in adopting Chapter 12 was the difficulties farmers encountered in seeking to reorganize under Chapter 11").

[41] Plan, ¶ A(7). The Court notes that in drafting a Chapter 12 plan, parties may avoid the difficulties inherent in interpreting § 1229(c) by including a provision allowing the modification of secured claims to be paid longer than five years.

and various items of personal property. Because it is an allowed secured claim, the proposed modification of the plan to extend the payment period on the Bank's claim is excepted from the 5-year limit in § 1229(c) by § 1222(b)(9), made applicable by § 1229(b)(1). On that basis, the modification will be granted.

IV. Conclusion and Order

Here, Debtor's original plan proposed to pay the Bank over a period longer than five years. His proposed modification also proposes to pay the Bank over a period longer than five years. While § 1229(c) generally prohibits the modification of plans that contain payment periods longer than five years, § 1222(b)(9), made applicable to modifications by § 1229(b)(1), specifically excepts payments on secured claims from that prohibition. The exception is consistent with the statutory scheme and underlying policy of Chapter 12. Therefore, § 1229(c) does not preclude Debtor from modifying his plan as proposed in the Motion.

For these reasons, the Court grants the Motion in part with respect to the proposed modification of the Bank's claim. The Court sets the remainder of Debtor's Motion and the Stay Relief Motion to a status conference on April 9, 2026, at 9:30 a.m.

**It is so ordered.**

###